**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Deidre L. Jones, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>BMO Bank, N.A.,<br><br>       Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff Deidre L. Jones, individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Defendant BMO Bank, N.A. ("BMO" or "Defendant"), based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1. When dealing with consumer contracts, normally presented on a take-it-or-leave-it basis, legislatures around the nation have statutorily prohibited companies from taking advantage of customers through unfair acts. In the context of consumer fees, whether a fee is considered unfair frequently turns on a simple principle: if the consumer will not receive a commensurate benefit from the fee, then the consumer must have had a practical opportunity to avoid the fee.

2. Nowhere can this principle be seen more clearly than in the banking sector. Financial institutions earn enormous profits by charging fees for their services. For example, banks allow customers to write checks, and in return the customers promise that there will be funds in their account to cover the check when it is deposited. If a customer breaks this understanding and writes a check without the funds to cover it (i.e., bounces a check), the bank will charge a fee to

the customer that wrote the check, which the customer could have avoided by ensuring sufficient funds were in the account.

3.     On the other side of the transaction, however, the recipient of the check typically has no way to know whether a check he or she deposits is going to bounce. Because the depositor could not have reasonably known the check was bad, it is unfair to charge the depositor a fee for returning the check.

4.     By contrast, banks maintain highly sophisticated systems for clearing checks and know, or should know, when the person that wrote the check does not have sufficient funds to cover the check or has access to the reasons that the check may not otherwise be valid.

5.     By charging these Deposited Item Return Fees, BMO unfairly targeted its customers with financial penalties for faulty checks the customers had no hand in issuing. Plaintiff was shocked when she was charged these Fees because she did nothing wrong yet was penalized by BMO. There was nothing Plaintiff could do to avoid — or even anticipate — a Deposited Item Return Fee assessed by BMO at the time the deposit was returned.

6.     By charging its customers significant fees in situations where the customer did nothing wrong and could not have avoided the fee through reasonable diligence, BMO acted in a manner that is unfair, oppressive, and against public policy.

7.     Recent guidance from the Consumer Financial Protection Bureau ("CFPB") has reaffirmed the unlawful nature of BMO's Deposited Item Return Fee policy. In October 2022, the CFPB issued a compliance bulletin stating that it is an unfair act or practice for an institution to have a blanket policy of charging Deposited Item Return Fees anytime that a check is returned unpaid, irrespective of the circumstances or patterns of behavior on the account; the CFPB noted that these fees cause substantial monetary injury for each returned item, which consumers cannot reasonably avoid because they lack information about and control over whether a check will clear.[1]

---

[1] Consumer Financial Protection Bulletin 2022–06, Unfair Returned Deposited Item Fee Assessment Practices (Oct. 26, 2022), available at:

8. Illinois, among other States, has recognized the unfair nature of these fees. As State Treasurer, Mike Frerichs, recently noted in a letter to the Editor of the Chicago Sun Times: "I work to help people invest and grow their savings. We also fight to make sure those accounts aren't nickel-and-dimed by unnecessary fees . . . The White House recently proposed banning another type of junk fee that serves only to harm hardworking families in Illinois while fattening the bottom line of Wall Street banks. It is important to me how banks and other institutions treat families who want nothing more than to save a little money for the future. Attacking junk fees is a wise and simple step. . . These fees need to end, and we all need to do our part . . . Opponents describe these fees as small, but they collectively add up to billions, and they often are collected from people who can least afford them. I ask Congress to side with the people who work hard every day over the special interests of Wall Street."[2] Attorney General Kwame Raoul recently expressed support for this sentiment by signing a letter advocating for the Federal Trade Commission's proposed regulation on unfair or deceptive fees.[3]

9. Accordingly, Plaintiff, on behalf of herself and the Class and Subclass (defined below), now seeks to hold BMO accountable for its unlawful and unfair policy, and seeks damages, restitution, and injunctive relief, as set forth below.

## **PARTIES**

10. Plaintiff Deidre Jones is, and at all times mentioned herein was, an individual citizen of the State of Illinois residing in the County of Cook and held a BMO checking account

---

https://www.consumerfinance.gov/compliance/supervisory-guidance/cfpb-bulletin-2022-06-unfair-returned-deposited-item-fee-assessment-practices/ (last accessed September 16, 2024).

[2] Mike Frerichs, *Junk fees on financial transactions help Wall Street and hurt working families. Congress should ban them*, Chicago Sun Times (February 21, 2024), available at: https://chicago.suntimes.com/letters-to-the-editor/2024/02/20/junk-fees-banks-financial-transactions-economy-gun-laws-wilcox-letters (last accessed September 16, 2024).

[3] *See* Unfair or Deceptive Fees (February 7, 2024), available at: https://www.attorneygeneral.gov/wp-content/uploads/2024/02/2024.2.7-Comment-of-19-State-AGs-Unfair-or-Deceptive-Fees-Trade-Regulation-RuleFinal.pdf (last accessed September 16, 2024).

during the applicable statute of limitations period. Ms. Jones opened her BMO account in Illinois, and her account is, therefore, located there.

11.     Defendant BMO is a national bank headquartered in Chicago, Illinois. BMO is engaged in the business of providing retail banking services to consumers and businesses, including Plaintiff and members of the putative Class and Subclass, which includes the issuance of checking and savings accounts. BMO Financial Group is the eighth largest bank in North America by assets, with total assets of $1.29 trillion. BMO has 1,042 domestic locations across 28 states.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

13.     This Court has jurisdiction over Defendant because it operates in Illinois and has a main office and principal place of business in Chicago, Illinois. Accordingly, pursuant to 28 U.S.C. § 1348, BMO is a citizen of the State of Illinois.

14.     This Court also has jurisdiction over Plaintiff because Plaintiff is, and was throughout the applicable statute of limitations period, a BMO accountholder and Illinois resident.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

### I.     DEPOSITED ITEM RETURN FEES

16.     BMO levies Deposited Item Return Fees when a check is returned because it cannot be processed against the originator's account.

4

17.     In other words, when Person A writes a check to Person B and the check bounces or is returned unpaid, BMO charges Person B a fee even though Person B had no reasonable means of knowing the check would not clear.

18.     There are a multitude of reasons why a check someone received would bounce, nearly all of which lie entirely outside the control of the depositor. The reason could be insufficient funds, a stop payment order issued by the check writer, a closed or foreign account, or even a minor discrepancy on the check itself.  Even though the depositor has no control over the check, the Deposited Item Return Fees charged can range from $5 to over $30 and often vastly exceed the actual cost of processing the returned check.

19.     Deposited Item Return Fees are widespread within the banking industry. Most major banks and financial institutions levy them as part of their standard fee structure. If disclosed at all, Deposited Item Return Fees are often found in dense and convoluted legal agreements or associated fee schedules, making it difficult for consumers to discover them until they are actually charged. The ubiquitous and unavoidable nature of Deposited Item Return Fees has raised concerns about the fairness and predatory nature of imposing penalties on the depositor. In fact, these fees are nothing more than veiled revenue-generating tools that penalize innocent depositors for the actions of others.

20.     Recognizing the potential for abuse, the CFPB issued published Bulletin 2022-06 on November 7, 2022 (the "Bulletin").  The Bulletin, entitled *Unfair Returned Deposited Item Fee Assessment Practices*, highlights the CFPB's concerns about deceptive practices related to Deposited Item Return Fees, particularly in instances where fees are disproportionate to the actual costs incurred by the bank, or where customers are not adequately informed about the fees and their potential applicability.

21.     The CFPB deemed these fees unfair under the Consumer Financial Protection Act ("CFPA"). The CFPB took issue with financial institutions, like BMO, that charge consumers fees

"for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account." The Bulletin provides in relevant part:

> The Consumer Financial Protection Act (CFPA) prohibits covered persons from engaging in unfair acts or practices. Congress defined an unfair act or practice as one that (A) "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and (B) "such substantial injury is not outweighed by countervailing benefits to consumers or to competition."
>
> Blanket policies of charging Returned Deposited Item fees to consumers for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account are likely unfair.
>
> Fees charged for Returned Deposited Items cause substantial injury to consumers. Under the blanket policies of many depository institutions, Returned Deposited Item fees cause monetary injury, in the range of $10-19 for each returned item. **Depository institutions that charge Returned Deposited Item fees for returned checks impose concrete monetary harm on a large number of customers**.
>
> In many of the instances in which Returned Deposited Item fees are charged, consumers would not be able to reasonably avoid the substantial monetary injury imposed by the fees. **An injury is not reasonably avoidable unless consumers are fully informed of the risk and have practical means to avoid it.** Under blanket policies of many depository institutions, Returned Deposited Item fees are charged whenever a check is returned because the check originator has insufficient available funds in their account, the check originator instructs the originating depository institution to stop payment, or the check is written against a closed account. But **a consumer depositing a check would normally be unaware of and have little to no control over whether a check originator has funds in their account, will issue a stop payment instruction, or has closed the account**. Nor would a consumer normally be able to verify whether a check will clear with the check originator's depository institution before depositing the check or be able to pass along the cost of the fee to the check originator.

87 FR 66940, 66941 (emphases added).[4]

---

[4] The Bulletin is available at https://www.federalregister.gov/documents/2022/11/07/2022-23933/bulletin-2022-06-unfair-returned-deposited-item-fee-assessment-practices (last accessed September 16, 2024).

22.     The CFPB focused on the lack of benefit to consumers and the disproportionality associated with these fees, finding that "[c]heck processing is a service made broadly available to all depositors of checks, and ***there is no separate benefit to consumers from having a deposited check returned, as opposed to paid***." *Id.* The CFPB further found that these fees are ***not*** "well-tailored to recoup costs" because "the fee is charged to depositors even where the depository institution incurs no such loss from the returned transaction, and institutions usually do not collect the fee in those limited circumstances where they actually incur a loss." *Id.* Evidently, the CFPB has signaled its intention to impose stricter oversight and raise legal challenges against these unfair and predatory practices.

## II.     BMO IMPOSED A BLANKET "JUNK FEE" ON ALL RETURNED DEPOSITS, REGARDLESS OF CAUSE

23.     BMO operates a vast retail network across North America. Within this network, BMO offers a diverse range of deposit accounts, including a range of different checking and savings options, to customers like Plaintiff and the putative Class and Sub-class members.

24.     While depositing a check, customers naturally anticipate receiving the funds. However, factors entirely outside their control can lead to a deposit being returned unpaid. This can occur due to the originator lacking sufficient funds, a stop-payment order issued by the originator, or even processing errors. These unpredictable circumstances can expose the depositor to unfair and unavoidable financial repercussions.

25.     Customers, like Plaintiff, attempting to deposit funds lacked any control over whether the deposit would be returned, and had no way of protecting herself against the possibility of the deposit being returned and being charged a fee.  Depositors could not realistically verify with the originator's institution whether there were sufficient funds in the issuer's account before depositing an item.

26.     Conversely, upon information and belief, BMO maintains sophisticated systems to make sure that checks submitted for deposit are valid for processing and that the person or business

who wrote the check has sufficient money to pay it. Thus, BMO has the capability for determining the reason that a check is not valid and the person or business at fault for any invalid check.

27. BMO's blanket policy of charging the Deposited Item Return Fee on all returned deposits, regardless of the origin of the check or the cause of its return, raises concerns regarding fairness, effectively penalizing them for circumstances outside of their control.

## III. BMO CHARGED PLAINTIFF DEPOSITED ITEM RETURN FEES

### A. Plaintiff Deidre Jones

28. Plaintiff Deidre Jones opened a BMO Standard Checking account in or around Chicago, Illinois. Ms. Jones' Account was located in the State of Illinois at the time she opened the account and remains so to this day.

29. On or around December 3, 2021, Ms. Jones attempted to deposit a check into her BMO account.

30. At the time she attempted to deposit the check into her BMO account, Ms. Jones had no reason to believe that the check would be returned unpaid.

31. That day, to Ms. Jones' surprise and by no fault of her own, the check she deposited was returned unpaid. BMO charged Ms. Jones a Deposited Item Return Fee of $12.00. The Deposited Item Return Fee was deducted from the balance of Ms. Jones' account.

32. Because the $12 Deposited Item Return Fee that BMO charged Ms. Jones was assessed pursuant to BMO's blanket policy of assessing such fees irrespective of the facts and circumstances surrounding his attempt to deposit the check into his account, the Deposited Item Return Fee was unfair and unlawful.

## CLASS DEFINITION AND ALLEGATIONS

33. Plaintiff brings this action pursuant to Rule 23(b)(2) and (b)(3) on behalf of herself and on behalf of all other persons similarly situated.

34. Plaintiff proposes the following Class and Subclass definitions, subject to amendment as appropriate:

**Nationwide Class** (the "**Class**")
All individuals who, during the applicable statute of limitations, had or have accounts with BMO and were charged a Deposited Item Return Fee by BMO.

**Illinois State Subclass** (the "**Illinois Subclass**")
All individuals who, during the applicable statute of limitations, had or have accounts with BMO located in Illinois and were charged a Deposited Item Return Fee by BMO.

35. Excluded from the Class and Subclass are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

36. The proposed Class and Subclass meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

37. Plaintiff reserves the right to modify or amend the definitions of the proposed Classes and Subclasses before the Court determines whether certification is appropriate.

38. **Numerosity**. This action is appropriately suited for a class action. The members of the Class and Subclass are so numerous that the joinder of all members is impracticable. Plaintiff is informed, believes, and thereon alleges, that each proposed Class and Subclass contains thousands of accountholders who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

39. **Commonality.** This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

   a. Whether Defendant's assessment of Deposited Item Return Fees within the applicable statute of limitations was unfair, deceptive, or misleading;

   b. Whether Defendant breached the Implied Covenant of Good Faith and Fair Dealing by assessing Cashed or Deposited Item Returned fees on transactions in cases where the accountholders had no reason to believe the deposit would be returned unpaid;

   c. Whether Defendant was unjustly enriched as a result of charging

Plaintiff and the Class and Subclass Deposited Item Return Fees;

d.  Whether Plaintiff and the Class and Subclass suffered damages as a result of Defendant's assessment of Deposited Item Returned fees;

e.  Whether Defendant's conduct, as alleged herein, constitutes a violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, codified at 815 Ill. Comp. Stat. § 505/1, *et seq.* (the "**ICFA**");

f.  The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

g.  Whether Plaintiff and the Class and Subclass are entitled to declaratory and injunctive relief and the nature of that relief.

40.  **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class and Subclass, because, *inter alia*, all Class and Subclass members have been injured through the uniform misconduct described above and were charged improper and deceptive fees as alleged herein. Moreover, Plaintiff's claims are typical of the Class and Subclass members' claims because Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class and Subclass. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class and Subclass.

41.  **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class and Subclass. Plaintiff and the Class and Subclass each maintained an account with Defendant and were harmed by Defendant's misconduct in that they were assessed unfair Deposited Item Return Fees. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class or Subclass, and Defendant has no defenses unique to Plaintiff.

42.  **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class and Subclass members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible

for a member of the Class or the Subclass, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class or Subclass members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

43.     Plaintiff seeks monetary damages, including compensatory damages on behalf of the Class and Subclass, and other equitable relief on grounds generally applicable to the entire Class and the Subclass. Unless a Class and Subclass are certified, Defendant will be allowed to profit from its unfair and unlawful practices, while Plaintiff and the members of the Class and Subclass will have suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to benefit from the violations alleged, and the members of the Class and Subclass and the general public may continue to accept being unfairly treated.

44.     Defendant has acted and refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class and each Subclass as a whole.

### COUNT I
### BREACH OF CONTRACT AND IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING
### (On behalf of Plaintiff and the Class and Subclass)

45.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-43 as if fully set forth herein.

46.      Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

47.      A covenant of good faith and fair dealing is implied in Plaintiff's and the Class members' Account Agreements with Defendant. Whether by common law or statute, all contracts

impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit — not merely the letter — of the bargain. Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

48.     The material terms of the Account Agreement therefore included the implied covenant of good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each member of the Class fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff and the Class members' rights and benefits under the contract.

49.     Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contract, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

50.     As alleged herein, Defendant breached the implied covenant of good faith and fair dealing by systematically charging Plaintiff and the Class members Deposited Item Returned fees for attempting to deposit checks that could not be deposited irrespective of the facts and circumstances surrounding the accountholder's attempt to deposit the check into their account.

51.     Defendant's actions to maximize its revenue from Deposited Item Returned fees impedes the right of Plaintiff and other members of the Class to receive benefits that they reasonably expected to receive under the contract, as the money entrusted to Defendant for their banking activities was reduced.

52.      On information and belief, Defendant's actions as alleged herein were performed in bad faith, in that the purpose behind the practices and policies alleged herein was to maximize Defendant's revenue from Deposited Item Returned fees at the expense of their customers, in

contravention of Plaintiff's and the Class members' reasonable expectations.

53.     Plaintiff and members of the Class have sustained damages as a result of Defendant's conduct as alleged herein.

54.      As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and the Class members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

**COUNT II**
**UNJUST ENRICHMENT**
**(Plaintiff, on behalf of themselves and the Class and Subclass)**

55.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1–43 as if fully set forth herein.

56.     Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against Defendant.

57.     Plaintiff and the members of the Class and Subclass conferred a benefit on Defendant, which Defendant knew about, when they enrolled in Defendant's deposit accounts and were charged Deposited Item Return Fees.

58.     Plaintiff and the members of the Class and Subclass were, and many continue to be, customers of Defendant with deposit accounts. They reasonably believed that BMO would not charge them unreasonable fees beyond their control. Plaintiff and members of the Class and Subclass suffered financial losses when they were charged Deposited Item Return Fees in the form of funds deducted from their accounts.

59.     By charging Deposited Item Return Fees, Defendant unjustly enriched itself by taking a benefit, in the form of a $12 charge each time an item was returned, from each of its customers' accounts, regardless of their own action, without providing any additional value to its customers, including Plaintiff and members of the Class and Subclass. Defendant has accepted and retained these benefits even though Defendant failed to provide any service or product to the

customer and failed to provide any manner to avoid these fees, making Defendant's retention of them unjust.

60.     By its wrongful acts and omission described herein, including charging fees for actions beyond the customer's control, and for which consumers had absolutely no way of avoiding, Defendant was unjustly enriched at the expense of Plaintiff and the members of the Class and Subclass.

61.     Plaintiff and the Class and Subclass's detriment, and Defendant's enrichment, were related to and flowed from the wrongful conduct alleged in this Complaint.

62.     Defendant profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and the putative Class and Subclass members. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein.

63.     Plaintiff and the members of the Class and Subclass have been damaged as a direct and proximate result of Defendant's unjust enrichment.

64.     Plaintiff and the members of the Class and Subclass are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

65.     As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and the members of the Class and Subclass are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

### <u>COUNT III</u>
**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")**
**815 Ill. Comp. Stat. ("ILCS") 505/1, et seq.**
**(Plaintiff on behalf of herself and the Illinois Subclass)**

66.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1–43 as if fully set forth herein.

67.     Plaintiff brings this claim individually and on behalf of the members of the Illinois Subclass against Defendant.

68.     Plaintiff maintains a BMO account located in Illinois.

69.     Plaintiff and the Illinois Subclass members are persons within the context of the ICFA, 815 ILCS § 505/1(c), and Defendant is a person within the context of the ICFA, 815 ILCS 505/1(c).

70.     At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

71.     Plaintiff and the proposed Illinois Subclass are "consumers" within the meaning of the ICFA, 815 ILCS 505/1(e).

72.     The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2. This includes conduct that "creates a likelihood of confusion or misunderstanding" irrespective of whether the person has been in fact misled, deceived, or damaged thereby. 815 ILCS 505/2; 815 ILCS 510/2(a)(12).

73.     Defendant charged Deposited Item Return Fees in the regular course of its business and in the course of conducting trade and commerce and charged Plaintiff a Deposited Item Return Fee in the course of conducting trade and commerce. Defendant unilaterally imposed such charges on Plaintiff the members of the Illinois Subclass.

74.     Deposited Item Returned Fees are deceptive because customers expect that the checks they just deposited will generate additional funds that will be available. In other words, customers assume that the balance on their account will increase by the amount of the check they deposit. Charging these fees, for reasons beyond the customer's control, is deceptive because it undermines customers' expectations that additional funds will be in their account. Customers cannot expect to be charged fees in situations where the customer has no control or fault.

15

75.     Further, there was nothing Defendant's customers could do to avoid paying these illegal, unconscionable, and predatory fees. There was no justification for imposing these blanket fees, which the CFPB has deemed "junk fees." By imposing these fees, which provided no measurable service or product to its customers, including Plaintiff and the Illinois Subclass, Defendant engaged in unfair business practice in violation of the ICFA.

76.     Defendant's actions regarding Deposited Item Returned Fees, as described herein, are deceptive acts or practices in the conduct of the business trade or commerce or retail banking.

77.     Furthermore, under the CFPA, an "unfair" act or practice is one that "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and "such substantial injury is not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C. § 5531(c)(1).

78.     The CFPB — through Bulletin 2022-06 — has determined that Returned Deposited Item Fees, such as those charged by BMO, are materially unfair and deceptive because they cause substantial injury to consumers and fall within the CFPA's definition of unfair acts and practices because such fees cause substantial financial injury to accountholders, are not reasonably avoidable by accountholders, and do not provide a benefit that outweighs the injury they cause.

79.     Thus, pursuant to the CFPB's Bulletin 2022-06, Defendant's practice of charging Deposited Item Return Fees is deceptive and unfair and constitutes a violation of the ICFA.

80.     Plaintiff and all Illinois Subclass members sustained actual damages as a result of Defendant's unfair practice. The actual damages sustained by Plaintiff and all Illinois Subclass members was proximately caused by Defendant's unfair practice of charging Deposited Item Return Fees. In other words, had Defendant not engaged in the unfair practice of charging Deposited Item Return Fees, Plaintiff and the Illinois Subclass members would not have sustained damages. The actual damage is measured by the amount of the Deposited Item Return Fees charged by Defendant.

81.     By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes an unfair practice committed in the course of trade and commerce, intended to be relied upon by accountholders, that proximately caused actual damages to Plaintiff and the Illinois Subclass, in violation of 815 ILCS 505/2, and Defendant is liable to Plaintiff and the Illinois Subclass for the damages they have sustained as a result of Defendant's actions.

82.     Based on Defendant's unfair and/or deceptive acts or practices, Plaintiff and the Illinois Subclass are entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs, and attorneys' fees under 815 ILCS 505/10a.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant in the form of an Order:

A.     Certifying this action as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and naming Plaintiff as representatives of the Class and Plaintiff's undersigned attorneys as Class Counsel to represent the Class and Subclass Members;

B.     Naming Plaintiff as the representative of the representative of the Class and Illinois Subclass;

C.     Declaring that Defendant's conduct violated the laws referenced herein;

D.     Finding in favor of Plaintiff and the Class and Subclass on all counts asserted herein;

E.     Awarding actual, consequential, punitive, statutory and treble damages;

F.     Awarding applicable prejudgment post-judgment interest on all amounts awarded;

G.     For injunctive relief as pleaded or as the Court may deem proper;

H.     For disgorgement and restitution to Plaintiff and the Class and/or Subclass all monies received or collective from Plaintiff and the Class and/or Subclass and all forms of equitable relief;

I.  Awarding Plaintiff and the Class and Subclass reasonable attorneys' fees and expenses and costs of suit;

J.  Awarding damages in an amount to be determined at trial; and

K.  For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all triable issues.

Dated: September 18, 2024

Respectfully submitted,

SIRI & GLIMSTAD LLP

By: */s/ Lisa R. Considine*

Lisa R. Considine
745 Fifth Ave, Suite 500
New York, NY 10151
Telephone: 772-783-8436
Facsimile: 646-417-5967
Email: lconsidine@sirillp.com

Leslie Pescia (*pro hac vice forthcoming*)
101 North Seventh Street, #827
Louisville, Kentucky 40202
Telephone: 772-783-8436
Facsimile: 646-417-5967
Email : lpescia@sirillp.com

*Attorneys for Plaintiff and the Proposed Class*

18